IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COLEGIO DE ABOGADOS Y ABOGADAS DE PUERTO RICO, ET AL.<br><br>Plaintiffs<br><br>vs.<br><br>HON. SIGFRIDO STEIDEL FIGUEROA, ET AL.<br><br>Defendants | CIVIL NO. 19-2135 (PG)<br><br>RE: Violation of Civil Rights; Action for Declaratory Judgment, Injunctive Relief and Attorney's Fees |

## **MOTION FOR PRELIMINARY INJUNCTION**

TO THE HONORABLE COURT:

COME NOW the Plaintiffs to this action, by and through their undersigned counsel, and, pursuant to Fed.R.Civ.P 65, respectfully state and pray:

### **I. Introduction**

1.1. In the Complaint filed yesterday, Plaintiffs allege that Defendants, acting under color of state law as the Puerto Rico Court Administrator, the Regional Administrative Judges of the Puerto Rico Court of First Instance and the Clerk of the Puerto Rico Supreme Court, respectively, are entrusted and required to implement the 2018 Puerto Rico Regulation for the Assignment of Court Appointed Attorneys ("Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico "), as amended, which is set to become effective on January 1st, 2020. The Complaint further alleges that the Regulation in question (hereinafter "Regulation") violates the Individual Plaintiffs' constitutionally protected civil rights, particularly the right not to be deprived of liberty and proprietary interests without due process, the right to equal

protection under the law, and the right not to be divested of their property without just compensation. Docket No. 1, at ¶1.

1.2. Specifically, the Complaint alleges that the Regulation will force the Individual Plaintiffs to work thirty (30) hours per year for free, in both civil and criminal cases, and, subsequently, as many hours as may be required to fulfill their court appointed designations at unreasonably low rates, thus depriving the Individual Plaintiffs of their liberty and proprietary interests in the practice of the legal profession without due process. The Complaint further alleges that the Regulation will also force the Individual Plaintiffs to travel long distances in order to provide legal services to the economically disadvantaged and to advance the costs and expenses necessary to prosecute the actions in which they are designated as court appointed counsel when there are no funds to either pay the unreasonably low rates once they come into play or to reimburse the advanced expenses, thus perpetrating an unconstitutional taking. The Complaint also alleges that the attorneys in private practice, like the Individual Plaintiffs, are the only professionals that are required to work for free in providing the needy with access to courts, thus creating a class that violates the Equal Protection Clause. Finally, the Complaint alleges that the Regulation suffers from several instances of vagueness, allowing for an arbitrary implementation in violation of the Due Process Clause.

1.4. Premised on the alleged factual setting, Plaintiffs now move for the entry of a preliminary injunction precluding the Regulation from taking effect on January 1st, 2020, prohibiting Defendants from taking any action to implement same and excusing the Individual Plaintiffs from having to register in the pool of attorneys that may be compelled to provide *pro bono* legal services to the needy.

## II. **Argument**

A. The preliminary *injunction* analytical framework:

  2.1. While Fed.R.Civ.P. 65(a) provides that preliminary injunctions may be granted "only on notice to the adverse party", Fed.R.Civ.P. 65(c) adds that such provisional remedies may only be issued "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

  2.2. First Circuit jurisprudence on the subject has ruled time and again that, in order "[t]o obtain a preliminary injunction, the plaintiffs bear the burden of demonstrating (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003).

  2.3. The pertinent caselaw clarifies that the four factors "are not entitled to equal weight in the decisional calculus." *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 9 (1st Cir. 2013). Rather, the movants' likelihood of success on the merits "is the main bearing wall of the four-factor framework." *Id.* at 10 (internal quotation marks and citation omitted). *Accord W Holding Co. v. AIG Ins. Co.-Puerto Rico*, 748 F.3d 377, 383 (1st Cir. 2014) ("Truth be told, [l]ikelihood of success is the main bearing wall of this framework.") (internal quotation marks and citation omitted).

  2.4. Premised on the First Circuit's pronouncements, this Court has explained that "[e]valuating irreparable harm and its likelihood of success on the merits must be considered together. The greater the likelihood of success on the merits, the less required

showing of irreparable harm." *Total Petroleum Puerto Rico Corp. v. Colon-Colon*, 577 F. Supp. 2d 537, 551 (D.P.R. 2008).

2.5. The Court of Appeals has further explained that "[i]n the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis. As the Supreme Court has explained, '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury'... Accordingly, irreparable injury is presumed upon a determination that the movants are likely to prevail on their First Amendment claim." *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 10-11 (1st Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

2.6. Applying the preceding teachings, it is evident that a preliminary *injunction* is undoubtedly warranted in this case inasmuch all the relevant factors amply support its issuance. Plaintiffs have a strong likelihood to prevail on the merits and will suffer irreparable by the implementation of the Regulation. Moreover, the issuance of the preliminary *injunction* will not impose more of a burden on Defendants than its absence will impose on the Plaintiffs and the granting of prompt injunctive relief will promote the public interest.

B. The likelihood to prevail on the merits:

3.1. As previously discussed, the Complaint alleges that the Individual Plaintiffs have a liberty and proprietary interest over their inalienable and fundamental right to earn a living through the practice of the legal profession. The caselaw on the subject indisputably establishes that legal reality.

3.2. To that effect, the Supreme Court recognized 135 years ago:

> 'that all men are endowed' – not by edicts of emperors, or decrees of parliament, or acts of congress, but 'by their Creator with certain inalienable rights.' – that is, rights which cannot be bartered away, or given away, or taken away, except in punishment of crime – 'and that among these are life, liberty, and the pursuit of happiness; and to secure these' – not grant them, but secure them – 'governments are instituted among men, deriving their just powers from the consent of the governed.' Among these inalienable rights, as proclaimed in that great document, is the right of men to pursue their happiness, by which is meant the right to pursue any lawful business or vocation, in any manner not inconsistent with the equal rights of others, which may increase their prosperity or develop their faculties, so as to give to them their highest enjoyment. The common business and callings of life, the ordinary trades and pursuits, which are innocuous in themselves, and have been followed in all communities from time immemorial, must therefore be free in this country to all alike upon the same conditions. The right to pursue them, without let or hinderance, except that which is applied to all persons of the same age, sex, and condition, is a distinguishing privilege of citizens of the United States, and an essential element of that freedom which they claim as their birthright. It has been well said that 'the property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable.

*Butchers' Union Slaughterhouse Co. v. Crescent City Live-Stock Landing Co.*, 111 U.S. 746, 756-57 (1884).

    3.3.   The Supreme Court has consistently reiterated that preeminent principle ever since:

> Included in the right of personal liberty and the right of private property- partaking of the nature of each – is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the longestablished constitutional sense.

*Coppage v. Kansas*, 236 U.S. 1, 14 (1915).

    3.4.   In *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 238-39 (1957), the Supreme Court expressly included the practice of the legal profession within those occupations that are worthy of constitutional protection: "A State cannot exclude a

person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *See also Becker v. Illinois Real Estate Admin. and Disciplinary Bd.*, 884 F.2d 955, 957 (7th Cir. 1989) ("Several professions have been recognized as constituting 'common occupations.' These professions include an attorney.").

  3.5. Given that the practice of the legal profession is a fundamental right, the Regulation can be held to be constitutionally valid only if it passes the test of strict judicial scrutiny, which is reserved for cases involving laws which operate the disadvantage of suspect classes or, as in this case, interfere with the exercise of fundamental rights and liberties explicitly or implicitly protected by the Constitution. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 18-20 (1973). *See also Kreitzer v. Puerto Rico Cars, Inc.*, 417 F. Supp. 498, 502 (D.P.R. 1975) ("[T]he Supreme Court has employed a stricter test where the classification is based on 'suspect criteria' or where the classification restricts some fundamental right. There those are involved, the classification must not only meet the standards of the traditional test of the reasonableness as pointed above, but there must be a compelling state interest served by the classification.").

  3.6. In the case at bar, the Regulation does not identify the compelling state interest that would warrant the interference with the Individual Plaintiffs' fundamental right to practice their profession. That is particularly applicable to civil cases where the consensus is that, unlike criminal cases, there is no federal constitutional right lo legal assistance. *See Pitts v. Shinseki*, 700 F.3d 1279, 1283 (Fed. Cir. 2012) ("It is well established that, as a general matter, the constitutional right to counsel – and thus the

constitutional right to the effective assistance of counsel – does not attach in civil cases that do not involve the potential deprivation of a liberty interest.").

3.7. Even in criminal cases, the jurisprudence and the scholars on the subject caution that the imposition of free legal services is of questionable constitutional validity, for, as numerous courts have admonished, the obligation to provide criminal defendants with adequate legal counsel is the States' and the States alone. Thus, attorneys cannot be the only professionals burdened by the States in helping the States to meet their constitutional obligations:

> It cannot be disputed that the assistance of the poor is a legitimate governmental function. But, this goal cannot be accomplished by burdening one particular class of persons in an effort to solve what is clearly a governmental, societal, and nationwide problem. No other profession is similarly conscripted to aid the poor.

*Colbert v. Rickmon*, 747 F.Supp. 518, 525 (W.D. Ark. 1990).

3.8. As the Supreme Court of Louisiana eloquently explained in *State v. Wigley*, 624 So. 2d 425, 428 (La. 1993):

> To require that attorneys represent indigents with no recompense while bearing the expenses of the representation, when the attorneys must maintain their own practices and continue to meet their other professional and financial obligations in today's changed legal marketplace, is so onerous that it constitutes an abusive extension of their professional obligations. (Citation and internal quotation marks omitted.)

3.9. Or, as one oft-quoted commentator has noted: "It is unfair to put on any working group the burden of providing for the needy out of its stock in trade. No one would suggest that the individual grocer or builder should take the responsibility of providing the food and shelter needed by the poor. The same conclusion applies to the lawyer. The lawyer's stock in trade is intangible – his time fortified by his intellectual and personal qualities, and burdened by his office expenses. To take his stock in trade is like stripping

the shelves of the grocer or taking over a subdivision of the builder." Cheatham, *Availability of Legal Services: The Responsibility of the Individual Lawyer and of the Organized Bar* (1965) 12 UCLA L.Rev. 438, 444

3.10. In sum and in the absence of a discernible state compelling interest that would justify the burdening of only attorneys in private practice with the provision of free legal services to the indigent, it is simply beyond dispute that the Individual Plaintiffs have a strong likelihood to prevail in the merits.[1]

C. The irreparable harm:

4.1. Courts generally recognize that "the ongoing unconstitutional denial of a fundamental right almost always constitutes irreparable harm." *Brenner v. Scott*, 999 F. Supp. 2d 1278, 1291 (N.D. Fla. 2014).

4.2. Thus, the Individual Plaintiffs easily meet this factor.

D. The balance of hardships:

5.1. As this Court has noted, when, as here, Plaintiffs have "strong likelihood of success, the balance of hardships weighs heavily in their favor." *Lucas-Insertco Pharm. Printing Co. of Maryland LLC v. Salzano*, 124 F. Supp. 2d 27, 32 (D.P.R. 2000).

---

[1] Plaintiffs add that the vagueness and taking claims are equally strong given the lack of specificity that the Regulation has in identifying the civil matters that would qualify for *pro bono* services and the lack of a definition of the concept of "arisen indigency", see Docket No. 1 at ¶52, as well as the requirement that attorneys advance the expenses in *pro bono* cases, particularly in the absence of the necessary funds to reimburse them. *Id*, at ¶65. The caselaw clearly holds that "[v]ague enactments offend due process … because they risk arbitrary application by not furnishing explicit standards for those who enforce them." *Woodruff v. U.S. Dep't of Labor, Office of Workers Comp. Program*, 954 F.2d 634, 642 (11th Cir. 1992). Moreover, "[r]equiring lawyers to pay the necessary expenses of criminal defense work ... is ... constitutionally distinct from merely compelling lawyers to provide their services. Expenses might include investigatory services, deposition costs, witness fees, payment of expert witnesses, and similar outlays... Compelling individual attorneys to bear such costs raises serious due process issues." *Williamson v. Vardeman*, 674 F.2d 1211, 1215 (8vo Cir. 1982).

5.2. Moreover, it is evident that the irreparable harm that Plaintiffs face easily outweighs any hardship that Defendants may suffer by the issuance of the preliminary injunction herein requested.

E. The impact on the public interest:

6.1. As the sister court for the District of Massachusetts acknowledged, an injunction "serves the public interest by ensuring that federal and state officials comply with applicable laws and regulations." *Neighborhood Ass'n of The Back Bay, Inc. v. Fed. Transit Admin.*, 407 F. Supp. 2d 323, 343 (D. Mass. 2005), *aff'd*, 463 F.3d 50 (1st Cir. 2006), The Court further acknowledged that "the public has an important interest in making sure government agencies follow the law." *Id.*

6.2. In this case, the public interest will be well served by the preliminary injunction herein requested since it will ensure that Defendants comply with the Constitution.

F. Security deposit:

7.1. As previously stated, Rule Fed.R.Civ.P. 65(c) provides that a preliminary injunction may only be issued if the movant gives security deposit.

7.2. The caselaw on this subject clarifies that courts have "discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325 (9th Cir.), amended, 775 F.2d 998 (9th Cir. 1985). Courts have also held that "the likelihood of success on the merits ... tips in favor of a minimal bond or no bond at all." *Id*; at p. 1326.

7.3. Given the strong likelihood of success that Plaintiffs have, they should be excused from posting a bond or, in the alternative, they should be allowed to deposit a nominal security.

### III. Conclusion

8.1. The preceding discussion leaves no room for doubt that all the applicable factors decidedly favor the issuance of a preliminary injunction

8.2. The protection of Plaintiffs' constitutional rights warrants nothing less.

WHEREFORE, Plaintiffs respectfully request the Court, after affording Defendants the opportunity to be heard, to issue a preliminary *injunction* order precluding the Regulation from taking effect on January 1st, 2020, prohibiting Defendants from taking any action to implement same and excusing the Individual Plaintiffs from having to register in the pool of attorneys that may be compelled to provide pro bono legal services to the needy.

Respectfully submitted, in San Juan, Puerto Rico, on December 17, 2019.

*S/Guillermo Ramos Luiña*
GUILLERMO RAMOS LUIÑA
USDC-PR NO. 204007
gramlui@yahoo.com

P. O. Box 22763, UPR Station
San Juan, PR 00931-2763
Tel. 787-620-0527
Fax 787-620-0039