# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| COLEGIO DE ABOGADOS Y ABOGADAS DE PUERTO RICO, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> HON. SIGFRIDO STEIDEL FIGUEROA, ET AL., <br><br> Defendants. | CIVIL NO. 19-2135 (WGY) <br><br> RE: Civil Rights; Declaratory Judgment; Injunctive Relief |

## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR WANT OF STANDING AND RIPENESS OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM

TO THE HONORABLE COURT:

COME NOW, all Defendants, through the undersigned attorneys, and respectfully move the Court to dismiss the Second Amended and Supplemental Complaint (Docket No. 51-1) (the "Complaint") pursuant to Fed.R.Civ.P. 12(b)(6) because Plaintiffs lack standing to bring this action and the claims are not ripe for adjudication or, in the alternative, for failure to state a claim upon which relief can be granted.

## INTRODUCTION

This Court should dismiss the Complaint as a matter of law.  Plaintiffs, the local bar association, known as *Colegio de Abogados y Abogadas de Puerto Rico* ("CAAPR"), and some of its individual members improperly attempt to use the federal court system to halt a judicial *pro-bono* program by enjoining the Puerto Rico Judicial Branch, through its judicial officers, from exercising its "unique latitude" to regulate the bar.  *See Romany v. Colegio de Abogados de Puerto Rico*, 742 F.2d 32, 34 n. 3, 40 & 42 (1st Cir. 1984). Such extraordinary interference with the administration of a state court system is predicated upon several legally mistaken premises. As discussed below, Plaintiffs' claims are unfounded and "would run contrary to the basic

principles of equity, comity, and federalism." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1070 (7th Cir. 2018), cert. denied, 140 S. Ct. 384 (2019) (internal citations and quotation marks omitted).  "[A] federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts", *Id.* at 1070-71, as is precisely the case in this proceeding.

Additionally, Plaintiffs lack standing, the controversies are not ripe for adjudication, and the complaint fails to allege sufficient facts to state a claim upon which relief can be granted.

Therefore, this Court should decline to exercise jurisdiction in light of the general principles of federalism, comity, and equity that underlie the abstention doctrines. *See id.* at 1071. In the alternative, it should dismiss Plaintiffs' complaint, for want of standing, ripeness, and failure to state a claim.

## FACTUAL BACKGROUND

1.     On October 12, 2018, aware of the need to examine the current standards that regulate the appointment of counsel in criminal proceedings and recognizing the need to extend the scope thereof to civil proceedings, the Puerto Rico Supreme Court adopted the Rules for the Appointment of Counsel in Puerto Rico (the "Regulation"). *See* **Exhibit 1**.

2.     The Regulation has been amended on four occasions: on May 6, 2019, on June 3, 2019, on February 5, 2020, and, very recently, on December 28, 2022. *See* **Exhibits 2-5**. Originally, the Regulation was scheduled to become effective on July 1, 2019, but through the May 6, 2019 amendment, the Supreme Court postponed its effective date until January 1, 2020. *See* **Exhibit 2**. After it became effective, the Supreme Court has continued to amend the Regulation as part of a continuing evaluation effort. *See* **Exhibits 3-5**.

3.     The Regulation states, as its legal basis, that attorneys have an "ethical and professional duty" to provide *pro bono* legal work and offer legal services free of charge to indigent persons pursuant to the Puerto Rico Canons of Professional Ethics, which canons were promoted by plaintiff CAAPR, adopted by the Puerto Rico Supreme Court, and have been in effect since

2

1972.  *See* **Exhibit 1** at Rule 1.  The Regulation further states that, pursuant to Article II, Section 1 of the Puerto Rico Constitution,[1] it is upon the State "to ensure that individuals with limited financial resources have access to legal representation."  *Id.*

4.      The Regulation provides that this system of court-appointed counsel will be financed with State funds as provided by Act No. 17 of March 11, 1915, as amended, and Article 271 of the Code of Criminal Procedure of 1935, as amended, or any other appropriation of funds enacted through legislation for this purpose.  *See* **Exhibit 1** at Rule 1.  For years, payment of legal fees and expenses incurred in court-appointed representation of indigent persons in criminal procedures was funded by a special court fee fixed by statute[2] and, historically, there has been a surplus of funds after paying all requests.[3]  In other words, there has never been an instance where such funds have been insufficient to pay all requests.   This source will continue to be used to reimburse legal fees and expenses incurred in court-appointed representation, as provided in the Regulation.  Nevertheless, the Government of Puerto Rico's Joint Budget Resolution for Fiscal Year 2022, Joint Resolution of June 30, 2021, at page 53, lines 16-17, included an additional appropriation of funds totaling $1,500,000 to be exclusively used "for the payment of expenses and fees for ex officio lawyers appointed by the Court."   *See* **Exhibit 6**.[4]   Similarly, the

---

[1] "The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality." PR CONST Art. II, §1.

[2] *See*, 32 L.P.R.A. § 1477 ("The Secretary of the Treasury shall use the amounts collected on account fees for the stay of proceedings to defray the expenses and fees of attorneys appointed by the court."); *see also*, 34 L.P.R.A. § 750.

[3] *See*, Act No. 51-2017, 34 L.P.R.A. § 750 and 32 L.P.R.A. § 1477 (appropriating surplus).

[4] Exhibits 6 and 7 are the Commonwealth of Puerto Rico's FY22 and FY 23 Certified Budgets.  The Court can take judicial notice, pursuant to Fed.R.Evid. 201, of the fact that the Commonwealth of Puerto Rico's FY22 and FY 23 Certified Budgets include appropriations for the payment of expenses and fees for *ex officio* lawyers appointed by the Court, given that this fact is not subject to reasonable controversy because it can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned.  Additionally, the inclusion of this document does not turn this motion to dismiss into a motion for summary judgment because "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, **and matters of which a court may take judicial notice**." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added).  "[S]ome extrinsic

Commonwealth of Puerto Rico's FY23 Certified Budget, Joint Resolution of June 30, 2022, at page 53, lines 27-28, includes an additional appropriation of funds totaling $1,541,000 to be exclusively used "for the payment of expenses and fees for ex officio lawyers appointed by the Court."[5] *See* **Exhibit 7**.

5.      In general terms, the Regulation codifies which types of proceedings, both civil and criminal, qualify for appointment of *ex officio* counsel. *See* **Exhibit 1** at Rule 5.  Particularly, as to civil proceedings, the Regulation is very limited in nature, as it only applies to two discrete and limited groups of civil judicial proceedings with regard to specific causes of action: (a) those in which the right to an *ex officio* attorney has been recognized by law; and (b) those involving basic human needs, which proceedings are specifically enumerated in the Regulation. *See* **Exhibit 1** at Rule 5(b).

6.      The Regulation also creates procedures for determining whether a person qualifies as indigent and for selecting a court-appointed attorney, in the applicable proceedings, for those persons who qualify. *See* **Exhibits 1** and **5** at Rules 8-9.  Additionally, the most recent amendments created a pool of attorneys who voluntarily request to be at the top of the *ex officio* lists, which is analogous to the voluntary program adopted by this Court for the District of Puerto Rico.  *See* **Exhibit 5** at Rules 8 (c)(1) - (2) and 10 and Local Civil Rule 83L.  The attorneys who request to be included in this pool will be at the top of the assignment lists and, only if none of those attorneys are available, will the courts assign other attorneys based on years of experience and judicial region.  The attorneys on the voluntary list will have the benefit of receiving compensation for hours worked since the first hour, rather than having to work the first 30 hours without compensation.  *See* **Exhibit 5** at Rule 8 (c)(2).

---

documents may be considered without converting a motion to dismiss into a motion for summary judgment. These exceptions include 'documents the authenticity of which are not disputed by the parties; … official public records; ... documents central to plaintiffs' claim; [and] ... documents sufficiently referred to in the complaint." *Freeman v. Town Hudson*, 714 F.3d 29, 36 (1st Cir.2013) (internal citations omitted).

[5] Available at https://oversightboard.pr.gov/budgets-2/

7.      The Regulation also requires that, prior to appointing an *ex officio* attorney in a civil proceeding, the indigent party must show the court the steps taken to obtain legal representation from entities offering free legal services, and that those services were denied. *See* **Exhibit 1** at Rule 6.

8.      When selecting the attorney to be appointed, the procedure considers the location of the attorney's office in relation to the judicial area where the case is pending, his or her areas of specialized knowledge, years of experience, and other *pro bono* court appointments. *See* **Exhibit 1** at Rule 8.  Additionally, the Regulation provides criteria for relieving an attorney from an appointment, including due to ethical conflicts or other *ex officio* appointments. *See* **Exhibit 5** at Rule 9 (b).

9.      The Regulation also provides for the monthly payment of legal fees in excess of 30 hours per year in both civil and criminal cases. *See* **Exhibit 5** at Rule 12.  Moreover, an *ex officio* attorney may, but is not required to, advance part or all of the litigation expenses and, if the attorney choses to advances such expenses, he or she may request reimbursement. *See id.* at Rule 16. **Thus, the advancement of the litigation expenses is purely voluntary and reimbursable**.

10.      Under the scheme that was in place prior to the Regulation, which operated for decades, the appointment of an *ex officio* attorney to represent an indigent person was made without the benefit of the computerized Court Appointment Module created by the new Regulation to categorize the pool of attorneys by geographic area and areas of practice in order to select the next attorney in line for appointment. *See* **Exhibit 1** at Rule 8 (c)-(e).  Also, pursuant to the Regulation, this electronic Module includes all active attorneys in Puerto Rico not expressly exempt or excluded by the Regulation, increasing the number of attorneys per judicial zone and, as a consequence, reducing the possibilities of being repeatedly selected to provide *ex officio* legal services during the same year.  Under the previous scheme, the payment of fees and reasonable expenses was only available in criminal cases and had to be requested at the end of

the proceeding, rather than monthly.[6]   The table below compares the pre-Regulation and post-

Regulation schemes:

| PRE-REGULATION SCENARIO | REGULATED SCHEME |
|---|---|
| No **exclusions or exemptions.** | Exclusion and exemptions clearly defined. |
| No uniform **system for selection**. Functioned in an *ad hoc* fashion. | Electronic Court Appointment Module which provides separate lists for attorneys in criminal and civil practice, provides information on attorney experience and nature of practice, and produces an appointment order based on years of experience. |
| **No voluntary pool** of attorneys to be selected with priority. | Pool of voluntary attorneys to be at the top of the assignment lists and receive payment from the beginning. |
| **No rational zones**.  Presented problems in areas were relatively few attorneys practice – repeated designations because of small pool. | Judicial zones, some of which include two or more judicial regions for a more uniform and just distribution of assignments. |
| **No incentives** for *pro bono* work, and **no alternatives** for compliance with obligation. | Offers alternatives for compliance by crediting work done through authorized entities or voluntary representation in court in order to be excluded from the *ex officio* lists. |
| **No payment of fees in civil cases.** | Provides for payment at a rate of $60/hr, after first 30 hours are completed. |
| **Payment** of attorneys' fees **at the end** of the case. | Payment of attorneys' fees on a monthly basis. |
| Required attorneys to advance **litigation costs**, which, in criminal cases, would be reimbursed at the end of the year. | Makes advancement of costs strictly voluntary in all cases. |
| **Eligible civil cases** not defined. | Clearly defines eligible civil cases Definition is discrete and very limited.  List includes verbatim the CAAPR's proposal. |
| No formal **periodic evaluation** of procedures. | Regulation requires periodic reports and provides for constant monitoring and development of recommendations. |

---

[6] *See*, 4A L.P.R.A. Ap. XXVIII-A, §§ 2 & 21.

11.     According to the allegations in the Complaint, "on September 14, 2019, [CAAPR's] General Assembly overwhelmingly approved Resolution No. 6" authorizing and commanding "[CAAPR] to file the instant action to contest the validity of the Regulation." (Docket No. 51-1, ¶ 15-16.)

12.     On December 16, 2019, three months after the approval of Resolution No. 6 and only two weeks before the Regulation was scheduled to become effective, Plaintiffs, filed this Complaint, erroneously alleging that the Regulation "imposes upon them the obligation to provide thirty (30) hours of free legal services on an annual basis."  (Docket 51-1 ¶ 27.)  Plaintiffs claim that the implementation of the Regulation will violate their constitutional civil rights by depriving them of liberty and proprietary interests without due process, violating their right to equal protection under the law, and depriving them of their property without just compensation.

13.     Plaintiffs allege that "neither the Puerto Rico Supreme Court nor the Commonwealth of Puerto Rico has secured nor has made available the necessary funds to reimburse expenses incurred by court appointed counsel nor to compensate them after the thirty (30) hours of service in any fiscal year." (Docket No. 51-1, ¶ 33.)  Accordingly, they claim that the Regulation imposes a regulatory taking "by failing to allot the necessary funds and fiscal resources to reimburse the expenses incurred by the attorneys in the provision of free legal services to the needy and to pay fees to attorneys after the first thirty (30) hours of work in a given fiscal year." (Docket No. 51-1, ¶ 108.)

14.     Plaintiffs allege that the Regulation violates their "fundamental right to practice their chosen profession by forcing them to work for free in civil matters." (Docket No. 51-1, ¶ 78.)

15.     Plaintiffs also aver that the Regulation violates "the Due Process Clause since it deprives the Individual Plaintiffs of their proprietary rights by forcing them to invest their time and resources on a *pro bono* basis." (Docket No. 51-1, ¶ 82.)
Plaintiffs additionally allege that the Regulation is vague, "thus allowing an arbitrary application on a case-by-case basis." (Docket No. 51-1, ¶ 94.)

**LEGAL STANDARD FOR MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(6)**

Pursuant to Fed.R.Civ.P. 12(b)(6), a defendant may request dismissal of a complaint for failure to state a claim upon which relief may be granted.  When a complaint is challenged under this Rule, the court construes the pleading liberally in the pleader's favor. *See, e.g., Kaltenbach v. Ricards*, 464 F.3d 524, 526-27 (5th Cir. 2006).  In other words, the Court presumes that all well-pleaded allegations are true, resolves all reasonable doubts in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *See, e.g., Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009).

The allegations contained in a complaint are viewed through the prism of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  Rule 8 exists to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While encouraging brevity, however, the federal pleading duty is far from trivial. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (Rule 8 still "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *see also Doyle v. Hasbro, Inc.* 103 F.3d 186, 190 (1st Cir. 1996) (the pleading requirement is real and "not entirely a toothless tiger"). Therefore, to comply with Rule 8, a complaint need not include "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555) (additional citation omitted).  The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).  Complaints that offer "labels," "conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" fail to rise above the speculative level. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Consequently, to survive a motion to dismiss, a complaint must allege factual matters that state a "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

The standard for a motion to dismiss for want of standing is the same as that "traditionally applied to motions to dismiss made under [Federal Rule of Civil Procedure] 12(b)(6)." *U.S. v. AVX Corp,* 962 F.2d 108, 114 (1st Cir.1992).  Thus, when examining a motion to dismiss for want of standing, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Warth,* 422 U.S. at 501.  A court must reject all "unsupported conclusions or interpretations of law."  *Stein v. Royal Bank of Canada,* 239 F.3d 389, 392 (1st Cir.2001).  A bald and conclusory assertion alone is insufficient to state an injury.  *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990) (A reviewing court is obliged neither to "credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation").  "[B]ecause the Court has saddled the complainant with the burden of clearly alleging facts sufficient to ground standing, we are of the opinion that, where standing is at issue, heightened specificity is obligatory at the pleading stage."  *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir.1992).

## ARGUMENT

### A.  Plaintiffs Lack Standing to Bring this Lawsuit

Whether a party has standing to bring forth an action is a threshold issue.  *Horne v. Flores,* 557 U.S. 433, 445 (2009); *Warth v. Seldin,* 422 U.S. 490, 498 (1975) (stating "this is the threshold question in every federal case").  "It is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts], and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) (internal citations omitted).  Article III of the United States Constitution "limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies'".  *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 597-598 (2007).  In doing so, the Constitution "restricts [the judicial power] to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law."  *Summers v. Earth Island Institute*, 555 U.S. 488, 492 (2009).

Standing is not to be placed in the hands of concerned bystanders, who will use a judicial process as a mechanism for the vindication of value interests.  *Diamond v. Charles*, 476 U.S. 54, 62 (1986).  An association ⸺such as CAAPR⸺ has standing to file a complaint "on behalf of its members **when its members would otherwise have standing to sue in their own right**, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit".  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181 (2000) (Emphasis added). *See also*, *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 269 (2015).

A person ⸺ i.e. a member of an association⸺ meets Article III standing if he or she complies with the following threefold test: (1) has suffered an injury in fact, which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there is a "causal connection between the injury and the conduct complained of –the injury has to be 'fairly …trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court";  and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Lujan v. Defenders of Wildfire*, 504 U.S. 555, 560-561 (1992).

An injury in fact "exists when a defendant's actions have inflicted a **concrete, present harm on the plaintiff**."  *Hedges v. Obama*, 724 F.3d 170, 188 (2nd Cir. 2013) (Emphasis added).  The injury is particularized when it "affect[s] the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 564 & n. 4.  "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

In *Schutz v. Thorne*, 415 F.3d 1128, 1133 (10th Cir. 2005), cert. denied, 546 U.S. 1174, (2006), the court found that a nonresident who paid for a Wyoming hunting license had standing to challenge a statute that set higher fees for nonresidents than for residents because "the higher

fee … is an actual, concrete injury ….."  In *Wright v. Riveland*, 219 F.3d 905, 914 (9th Cir. 2000), prison inmates were deemed to have standing to challenge a statute that deducted 35% of all funds received by an inmate from outside sources because the deprivation of funds is an actual injury.  In *Markle Interests, L.L.C. v. United States Fish and Wildlife Service*, 827 F.3d 452, 461–464 (5th Cir. 2016), the court determined that certain landowners had standing to challenge the designation of their private property as a critical habitat for the dusky gopher frog under the Endangered Species Act.  Although they could not support Article III standing on the theory that they might someday want to engage in development activities that would require federal approval, the court concluded that they had standing because the designation has a negative impact on present property values.

An individual "does not have to await the consummation of threatened injury to obtain preventive relief."  *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923).  Nevertheless, "the future threat must be —like all allegations of injury sufficient to confer Article III standing— **'real and immediate', not 'conjectural or hypothetical'**."  *Rosen v. Tennessee Com'r of Fin. & Admin.*, 288 F.3d 918, 929 (6th Cir. 2002) (emphasis added).  "[T]o escape the [conjectural] characterization the claimant must show a substantial (if unquantifiable) probability of injury."  *DEK Energy Co. v. F.E.R.C.,* 248 F.3d 1192, 1195 (D.C. Cir. 2001).

Here, Plaintiffs "bear the burden of showing that" they have "standing for each type of relief sought".  *Summers*, 555 U.S. at 493.  Nonetheless, Plaintiffs have failed to do so since the injuries asserted in this case are entirely speculative and hypothetical, rather than concrete and particularized and actual or imminent.  Plaintiffs have not alleged that they are actually suffering a concrete and particular damage, nor could they articulate that they will be imminently injured as a direct result of the Regulation's effectiveness.  In fact, as of this date, none of the Plaintiffs allege they have been appointed *ex officio* under the Regulation.  The Complaint also lacks sufficient allegations that the Regulation will cause each Plaintiff, personally, to suffer a clear and concrete injury.  "A barebones allegation, bereft of any vestige of a factual fleshing-out, is precisely

the sort of speculative argumentation that cannot pass muster where standing is contested." *U.S. v. AVX Corp.*, 962 F.2d at 117, *citing FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990).

The truth is that Plaintiffs cannot articulate that they will suffer an imminent injury because their interpretation of the Regulation is erroneous and over extensive.  Contrary to what the Complaint specifically avers, **the Regulation does not require any attorney to provide 30 hours of *pro bono* work annually**. Rather, it establishes that, upon certain conditions, an attorney could be appointed to provide *ex officio* legal services and, in such a case, would be entitled to compensation after completing 30 hours of free legal work.

Yet, for the Individual Plaintiffs in this case to be appointed by the court to represent indigent persons, several events need to occur, all of which are uncertain at this time. *First*, a case of the types that qualify for the appointment of an *ex officio* lawyer needs to be filed.  *See* **Exhibit 1**, Rule 5.  *Second*, a party to that case must comply with the Regulation's definition of indigent person and show the court that it made efforts to obtain representation from entities dedicated to providing free legal representation and that such services were declined.  *See* **Exhibit 1** at Rule 8 (a) and (b).  *Third*, none of the attorneys in the pool of voluntary attorneys for that judicial region must be available for the assignment of the case.  *See* **Exhibit 5**, Rule 8 (c)(1) and (2).  *Fourth*, the Plaintiffs would have to be in the pool of court-appointed counsel for the judicial region where the case is pending and would need to be next in line in the pool of attorneys for court appointment. *See* **Exhibit 5** at Rule 8 (c)(2).  *Fifth*, Plaintiffs must also have the minimum specialized knowledge and years of experience to competently represent the indigent person in that specific proceeding.  *See* **Exhibit 1** Rule 8 (e). *Sixth*, Plaintiffs would need to be free of any ethical conflict that would bar them from representing the party.  *See* **Exhibit 1** at Rule 8 (g).  *Seventh,* assuming that Plaintiffs are appointed as *ex officio* counsel, Plaintiffs would have to challenge that designation because the appointment would: (1) be unduly burdensome; (2) entail a breach of the ethical duties of diligence and competence; (3) cause personal, ethical, or professional conflicts of interest; or (4) show that they have been appointed *ex officio* three times

during the same fiscal year and those assignments required a substantial investment of time, and their challenge would have to fail.  *See* **Exhibit 5**, Rule 9 (b).  *Finally*, for their takings claims to survive, Plaintiffs would have to be required to work in excess of 30 hours, request payment of attorney's fees incurred after the first 30 hours, and payment must be denied due to lack of funds.

Plaintiffs also failed to allege that, under the scheme that was in place prior to the Regulation, they were unable to collect payment of attorney's fees incurred in criminal cases when appointed as *ex officio* counsel.  As Act No. 51-2017[7] illustrates, historically there has been a surplus of funds after paying all requests for reimbursement and fees in excess of 30 hours in criminal cases.  They have also failed to allege that the appropriations of $1,500,000 and $1,541,000 have been insufficient to cover the fees and expenses claimed by attorneys appointed *ex* officio during fiscal years 2021-2022 and 2022-2023.  Accordingly, it is highly speculative and entirely unsupported for Plaintiffs to allege that the Commonwealth of Puerto Rico has failed "to allot the necessary funds and fiscal resources to reimburse the expenses incurred by the attorneys in the provision of free legal services to the needy and to pay fees to attorneys after the first thirty (30) hours of work in a given fiscal year." (Docket No. 51-1, ¶ 108.)

Whether any, or all, of these factors will occur is highly speculative since they are dependent on uncertain future events and the actions of third parties. As a result, it is currently uncertain whether Plaintiffs will ever see themselves injured by the Regulation.  Considering that the alleged injury is subject to events that may or may not happen, there can be no imminent danger to Plaintiffs as a result of the implementation of the Regulation.  Consequently, both the Individual Plaintiffs and CAAPR lack standing to pursue this lawsuit and, thus, the Complaint should be dismissed.

---

[7] 34 L.P.R.A. § 750 and 32 L.P.R.A. § 1477 (appropriating surplus).

### B.  The Controversy is Not Ripe for Adjudication

Similarly, the controversies in the Complaint are not ripe for adjudication. "Ripeness doctrine is based on the Constitution's case-or-controversy requirements as well as discretionary prudential considerations."  *Wisconsin Right to Life State Political Action Committee v. Barland*, 664 F.3d 139, 148 (11th Cir. 2011).  Its main purpose is "to determine whether a dispute has yet matured to a point that warrants decision."  13 B Wright & Miller, *Federal Practice and Procedure*, 3rd ed., § 3532.  This is based on the premise that "courts should not render decisions absent a genuine need to resolve a real dispute."  Wright & Miller, § 3532.1.

In evaluating whether a dispute complies with the ripeness requirement, "the central focus is on whether the case involves **uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all**."  *Tarrant Reg'l Water Dist. V. Hermann*, 656 F.3d 1222, 1250 (10th Cir. 2011) (Emphasis added); *Initiative and Referendum Institute v. Walker,* 450 F.3d 1082 (10th Cir. 2006).  A claim is deemed "unripe when critical elements are contingent or unknown." *Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 260 (7th Cir. 1995).  For example in *Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.,* 452 U.S. 264, 304 (1981), the Supreme Court concluded that a challenge of dozens of coal mining plaintiffs to civil penalty provisions of the Surface Mining Control & Reclamation Act of 1977 was not ripe, **since none of them had been involved in civil penalty proceedings**.  In *U.S. v. Butler*, 137 F.3d 1371 (5th Cir. 1998), the Court of Appeals determined that the defendant's argument that he might be imprisoned because of his indigence was not ripe, since he did "not assert that he has suffered or is about to suffer such punishment." *Id*.  In *Mayfield v. Dalton*, 109 F.3d 1423, 1425 (9th Cir. 1997), the court found that there was no sufficiently imminent threat of injury to establish a ripe claim, although the plaintiffs remained subject to recall to active duty from the reserves. In *Senty-Haugen v. Goodno*, 462 F.3d 876, 889, (8th Cir. 2006), the court held that plaintiff's challenge of a state-imposed fine was not ripe, as too speculative and premature for review because the state had not yet collected any payment.

14

As argued in the previous section, the constitutional violations alleged by Plaintiffs in the Complaint depend on the occurrence of a chain of several uncertain or contingent future events that may not occur as anticipated or may not occur at all.  It is currently uncertain whether Plaintiffs will ever see themselves injured by the Regulation.  Currently none of the Plaintiffs allege they have been appointed as *ex officio* counsel pursuant to the Regulation or that the funds allotted for the repayment of fees and expenses incurred by attorneys appointed *ex officio* have proved insufficient. Considering that the alleged injury is subject to events that may or may not happen, there can be no imminent danger to Plaintiffs as a result of the implementation of the Regulation and, thus, the Complaint is not ripe for adjudication.

With regards to the takings claim, Plaintiffs assert that, by compelling them to provide free legal services without just compensation, the Regulation constitutes a taking of their rights to earn a living through the practice of the legal profession.  The U.S. Supreme Court has held that "a property owner has a claim for a violation of the Takings Clause **as soon as a government takes his property for public use without paying for it**."  *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162, 2170 (2019) (Emphasis added).  "[T]he act of taking […] is that event which gives rise to the claim for compensation."  *United States v. Dow*, 357 U.S. 17, 22 (1958) (Emphasis added).  That is, "[t]he Fifth Amendment right to full compensation arises at the time of the taking." *Knick*, 139 S.Ct. at 2070.[8]

As already argued, the Regulation itself does not compel Plaintiffs to provide free legal services; that is an obligation imposed on all attorneys admitted to practice in Puerto Rico by the Puerto Rico Canons of Professional Ethics, a body of ethic norms approved over 45 years ago by Plaintiff CAAPR and adopted by the Puerto Rico Supreme Court.  But even if Plaintiffs' claims were true, and the Regulation constitutes a taking of their rights to earn a living through the practice of the legal profession, which is denied, their claim is not yet ripe for adjudication because

---

[8] *See also Scheehle v. Justices of Supreme Court*, 508 F.3d 887 (9th Cir. 2007).

none of the Plaintiffs allege they have been appointed *ex officio* pursuant to the Regulation (much less that they have not been compensated) and it is uncertain if they ever will be appointed. Therefore, Plaintiffs' taking claim is not fit for the Court's review at this time.

### C. Plaintiffs Have Insufficiently Pled Their Causes of Action for Alleged Deprivation of Liberty and Property Without Due Process

To establish a procedural due process violation, Plaintiffs "must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [them] of that interest without constitutionally adequate process." *Aponte–Torres v. Univ. of P.R.,* 445 F.3d 50, 56 (1st Cir.2006). The question, then, is whether the process leading to that deprivation passes constitutional muster. The basic guarantee of procedural due process is that, "before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Amsden v. Moran,* 904 F.2d 748, 753 (1st Cir.1990) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)).

"In contrast, a substantive due process claim implicates the essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir.1990). Substantive due process protects individuals against state actions which are "arbitrary and capricious," *Newman v. Commonwealth of Massachusetts*, 884 F.2d 19, 25 (1st Cir.1989), those which run counter to "the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), or those which, in context, appear "shocking or violative of universal standards of decency," *Furtado v. Bishop*, 604 F.2d 80, 95 (1st Cir.1979) (footnote omitted), cert. denied, 444 U.S. 1035 (1980).

Here, Plaintiffs do not allege that, prior to enacting the Regulation, they were not forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner. Accordingly, they cannot possibly allege a procedural due process violation.

Accordingly, their due process claim must be analyzed under the standard applicable to substantive due process violations.

The Regulation does not strip the Plaintiffs of their bar admission (thus taking away their fundamental right to practice their chosen profession or earn their livelihood). Therefore, Plaintiffs have not made the necessary showing of a deprivation of their constitutionally protected liberty or property. Although Plaintiffs claim that the Regulation "deprives the Individual Plaintiffs of their fundamental right to practice their chosen profession by forcing them to work for free in civil matters," (Docket. 51-1, ¶ 78) this allegation is wholly unsupported and, once again, the result of Plaintiffs' inaccurate interpretation of the Regulation. As argued above, the Regulation does not require Plaintiffs to work any number of hours "for free." All attorneys admitted to practice in Puerto Rico have a duty to provide *pro bono* legal services to the indigent upon court appointment, and that is not a result of the Regulation, but rather, of Canon 1 of the Puerto Rico Canons of Professional Ethics, which predates by almost 50 years the challenged Regulation. Moreover, there is nothing in the Regulation that could be interpreted as having the effect of depriving Plaintiffs of their right to practice the legal profession. Plaintiffs can continue to practice the legal profession, if they desire, and such practice **may** include court-appointed cases in which they will have to comply with their duty to provide legal representation for the indigent. But, even in absence of the Regulation, Plaintiffs could be designated by the court to represent an indigent party on a *pro bono* basis in both civil and criminal cases, pursuant to the current state of law.[9] Therefore, the alleged deprivation of rights —if it were truly a deprivation— is not a result of the enactment of the challenged Regulation.

Moreover, by creating procedures to regulate the designation of attorneys to represent the indigent in legal proceedings, the State is not acting in an "arbitrary and capricious" manner, but

---

[9] *See, e.g. Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599 (1993); *Pueblo v. Morales*, 150 D.P.R. 123 (2000)*; In re Nuevo Reglamento Abogados Oficio*, 173 D.P.R. 653 (2008), codified at 4A L.P.R.A. Ap. XXVIII-A.

rather, complying with its obligation to ensure that **"[a]ll men are equal before the law** [and] **[n]o discrimination shall be made on account of** race, color, sex, birth, **social origin or condition**, or political or religious ideas." PR CONST. Art. II, § 1 (emphasis added).  Moreover, providing *pro bono* legal services can hardly be seen as "shocking or violative of universal standards of decency." *Furtado*, 604 F.2d at 95.  Accordingly, Plaintiffs have failed to sufficiently allege the Regulation will violate their due process and, thus, this claim should be dismissed.

### D. Plaintiffs Have Failed to Allege Sufficient Facts to Support a Cause of Action for Vagueness

Plaintiffs further allege that the Regulation is void for vagueness under the Due Process Clause of the Fourteenth Amendment because "it does not adequately define the civil proceedings that qualify for the provision of free legal services nor does it define the concept of 'arisen indigency'[sic.]." (Docket. 51-1 ¶ 94.) This allegation is contradicted by the Regulation itself, which provides adequate definitions for both terms.

Rule 5 (b), as amended, specifically provides the discreet and limited types of civil proceedings to which the Regulation applies.

> These Rules will apply to civil judicial proceedings where a natural person has been recognized a right to the appointment of legal representation, as well as proceedings involving basic human needs, which include, among others that may be established by parameters issues by the Office of Court Administration, the following:
>
> (1)
> …
>
> (12)

**Exhibit 1** at Rule 5 (b).  The amendment to the Regulation that included this list of specific civil judicial proceedings was the result of a letter from Plaintiff CAAPR suggesting the exact language that was adopted via amendment.   Moreover, the term "basic human needs" is defined at Rule 4(v).[10] Therefore, the Regulation clearly describes the very limited types of civil proceedings in

---

[10] For the additional use of this concept, regarding basic human needs, *see* James Podgers, *Time to Make A Move*, 96-NOV A.B.A. J. 60, noting that the American Bar Association has similarly "urge[d] governments

which an attorney may be appointed to represent an indigent person.  Prior to the February 5, 2020 amendments, Rule 5 (b) did not include the twelve specific types of civil judicial proceedings now contemplated by the Regulation.  Although this did not make the Regulation vague, the more specific amended language, which adopts the very definition proposed by plaintiff CAAPR, certainly moots Plaintiffs' vagueness claim.  "[A]n actual controversy must exist at all stages of the review, not merely at the time the complaint is filed."  *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops (ACLUM)*, 705 F.3d 44, 52 (1st Cir.2013).  In order for a claim for declaratory relief to survive a mootness challenge, the plaintiff must "show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  ACLUM, 705 F.3d at 54.  Because the Regulation was amended during the pendency of this case to include a specific list of the civil proceedings that qualify for the appointment of *ex officio* counsel, "[t]he controversy here is at this point neither immediate nor real." *Id.*

Regarding the term "arisen indigency[sic.]," Plaintiffs do not even mention in the Complaint in which context the term is allegedly not adequately defined.  Nevertheless, the only instance in the Regulation in which the term "indigency befalling" is mentioned is in Rule 8(h), which provides the criteria for authorizing withdrawal of an attorney from a legal representation.  In that context, the Regulation provides that "indigency befalling a person with private legal representation will not constitute just cause for withdrawal under section (i) of this rule."[11]  Moreover, section (i) of Rule 8 generally provides that fractioning representation by stages is discouraged and, thus, when a person with private legal representation alleges indigence, and there has been a determination

---

at the federal, state and territorial levels to assure that poor people have access to legal counsel at public expense as a matter of right in civil cases where basic human needs are at stake, such as those involving shelter, sustenance, safety, health or child custody."

[11] Courts have similarly recognized that "once an attorney-client relationship is established, [...] a lawyer owes duties to the client regardless of whether the client pays him." *Attorney Grievance Comm'n of Maryland v. Williams*, 335 Md. 458, 472, 644 A.2d 490, 496 (1994).

to that effect, "the court shall evaluate whether to recognize the continuity of the representation as a court appointment pursuant to the parameters established in these Rules."  Plaintiffs do not claim that the term "indigency" is not adequately defined –it is adequately defined in Rule 4(q)— and the term "befalling" can be easily understood in the context of Rule 8 to mean a state of indigence that occurs while a case is pending and the person has already retained private legal representation.  Therefore, Plaintiffs' vagueness claim is unsupported by the Regulation's own language and thus, Plaintiffs have not alleged sufficient facts that could support a plausible claim of vagueness.

### E. Plaintiffs Have Failed to Plead Sufficient Facts That Could Support Their Claim Under the Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment provides, in part, that "no State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV. "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race" or other inherently suspicious or arbitrary classifications. *Washington v. Davis*, 426 U.S. 229, 239 (1976).  "The touchstone of equal protection analysis is differential treatment of similarly situated people."  *Lopez Rosario v. Police Dep't*, 126 F. Supp. 2d 167, 174 (D.P.R. 2000).  "The Clause does not mandate that every citizen be treated identically, rather, it requires an adequate explanation for treating groups differently.  Race-based distinctions are inherently suspect and are therefore subject to the most searching examination." *Cotter v. City of Boston*, 323 F.3d 160, 168 (1st Cir.2003).

"[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class."  *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  "Under strict scrutiny, the government has the burden of proving that racial

classifications 'are narrowly tailored measures that further compelling governmental interests.'" *Johnson v. California*, 543 U.S. 499, 505 (2005).

If the classification does not meet the requirements for the strict scrutiny to apply it is examined "under the rational-basis standard.  This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one."  *Massachusetts Bd. of Ret.*, 427 U.S. at 314.  "[I]n the context of a **socio-economic regulation, the constitutional validity of the statute is subject to the 'traditional and/or rational nexus' test or standard**.  Under this test the challenged statute is presumed constitutional, and the burden of proof falls on the party that challenges its validity.  It shall suffice that the State has a legitimate interest and that the purpose sought has a reasonable nexus with the law."  *Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599 (1993) (emphasis added) *quoting*, *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984).

Here, Plaintiffs allege that the Regulation impermissibly distinguishes between attorneys in private practice and other professionals who are not required to provide their goods or services to the indigent free of charge, including attorneys in public service. Plaintiffs do not allege that the strict scrutiny applies, and it should not, since "attorneys in private practice" is not an inherently suspicious or arbitrary classification.  *See Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599 (1993) (holding that the rule allowing courts to discriminate against criminal lawyers vis-à-vis other practicing attorneys when appointing criminal *pro bono* matters is a *non*-suspect classification that stems from a socio-economic regulation subject to the rational nexus test).  Therefore, Plaintiffs' equal protection claim should be analyzed under the relatively relaxed rational-basis standard.

The Regulation easily meets the requirements of the Equal Protection Clause because the classification ("attorneys in private practice") rationally furthers the purpose identified by the State: creating a system for providing *pro bono* legal representation to the indigent in furtherance of the principles of equal treatment before the law and no discrimination on account of social

condition, both recognized in Article II, Sec. 1 of the Puerto Rico Constitution.  The Regulation excludes attorneys that are legally precluded from engaging in the private practice of the legal profession. *See* **Exhibit 1** at Rule 7(b)(4).  Accordingly, this classification is rationally supported since the Regulation cannot possibly require those attorneys (as may be the case for some attorneys in public service) to violate the law by engaging in private practice when they are legally prohibited from doing so.

Plaintiffs have failed to allege that the Regulation constitutes a violation of the Equal Protection Clause and, thus, this claim should be dismissed.

### F.  Plaintiffs Have Failed to Sufficiently Plead their Taking Cause of Action

Plaintiffs' Fifth Amendment taking claim is devoid of sufficient allegations to warrant the relief sought.  Plaintiffs allege that "[b]y compelling the Individual Plaintiffs to provide 30 hours of free legal services and to continue providing services for an indeterminate amount of additional hours at the completely inadequate rates of $30.00 and $60.00 per hour,[12] which are not sufficient to cover their overhead, the Regulation perpetrates a categorical regulatory taking."  (Docket No. 51-1, ¶ 107.)  Moreover, they claim that the Regulation perpetrates a further taking "by failing to allot the necessary funds and fiscal resources to reimburse the expenses incurred by the attorneys…" (Docket No. 51-1, ¶ 108.)

"A Fifth Amendment 'taking' does not occur when the state simply requires an individual to fulfill a commitment he has made."  *U.S. v. Dillon*, 346 F.2d 633, 638 (9th Cir.1965) citing, *Kunhardt & Co. v. United States*, 266 U.S. 537, 540 (1925).  "An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has

---

[12] The most recent amendments to the Regulation increased compensation to $60.00 per hour for all types of legal work assigned *ex officio*, in excess of 30 hours.  *See* **Exhibit 5**, Rule 12.

consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a 'taking of his services.'"  *Id.* at 635.  All attorneys admitted to practice in Puerto Rico are required to comply with the Puerto Rico Canons of Professional Ethics.  Canon 1 of the Puerto Rico Canons of Professional Ethics specifically provides that every lawyer:

> must accept and perform any reasonable commission to render legal services gratuitously to indigent persons, especially insofar as the defense of the accused and the assistance of counsel for indigent persons are concerned. **The absence of economic compensation in such cases does not relieve the lawyer from his obligation to offer competent, diligent, and enthusiastic legal services**.

PR ST. T. 4 Ap. IX, § 1 (emphasis added).  Accordingly, the Regulation does not perpetrate a taking of the Individual Plaintiffs' services.  Rather, it merely regulates the compliance with an already established duty, which all attorneys previously consented to and assumed.[13]

Regulatory actions generally will be deemed *per se* takings for Fifth Amendment purposes (1) where the government requires an owner to suffer a permanent physical invasion of her property, *see Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), or (2) where regulations completely deprive an owner of "all economically beneficial us[e]" of her property, *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016 (1992).  Outside these two categories, regulatory takings challenges are governed by *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).  *Penn Central* identified several factors—including the regulation's economic impact on the claimant, the extent to which it interferes with distinct investment-backed expectations, and the character of the government action—that are particularly significant in determining whether a regulation effects a taking.

Plaintiffs simply cannot allege that the Regulation creates a *per se* taking because it obviously does not deprive them of "all economically beneficial use" of their property, in this case,

---

[13] In fact, the Local Civil Rules for this District Court recognize the responsibility of all bar members to represent persons unable to afford counsel and provide for the appointment of *pro bono* counsel. Under such rules, recovery of attorney's fees is permissible, but not mandatory. *See* Local Civil Rule 83L (a) and (w). *See also State v. Singleton*, 216 So. 3d 985 (La. App. 4 Cir. 2016); N.Y. Ct. Rules § 520.16 (New York Pro Bono Requirement for Bar Admission).

their practice of the legal profession.  Providing thirty hours of *pro bono* legal services hardly resembles a deprivation of Plaintiffs' right to earn a living through the private practice of the law. Additionally, Plaintiffs are not required to advance the expenses necessary to defend indigents. Moreover, Plaintiffs have not pled sufficient factual details that could plausibly support a conclusion that the Regulation has such a significant economic impact on their ability to earn a living through the practice of the legal profession that it constitutes a taking.  Accordingly, Plaintiffs have insufficiently pled their regulatory taking cause of action.

Finally, the Court should disregard Plaintiffs' naked, formulaic, conclusory, and speculative allegations that there will be insufficient funds to pay attorneys for the fees incurred in the representation of indigent persons, after the first thirty hours, pursuant to the Regulation.  As already explained above, there is a fund that is sourced from a statutorily created court fee, which has been used for years to pay for *ex officio* attorneys' fees and reimbursement of costs, and that fund has always proved to be sufficient to comply with all requests for payment submitted by attorneys designated by the courts.  *See*, 32 L.P.R.A. § 1477 ("The Secretary of the Treasury shall use the amounts collected on account fees for the stay of proceedings to defray the expenses and fees of attorneys appointed by the court.");  *see also*, 34 L.P.R.A. § 750. Additionally, the Certified Budget for the Commonwealth of Puerto Rico includes the necessary appropriations for the reimbursement of fees and expenses to attorneys appointed *ex officio*. Plaintiffs have not alleged that this assignment has been insufficient to cover the requests for payments submitted by attorneys.  Therefore, it would be speculative, at best, to conclude that, under the Regulation, there would not be sufficient funds to continue paying the fees of *ex officio* attorneys.

Moreover, Plaintiffs' claim as to the alleged insufficiency of funds to reimburse the expenses incurred by attorneys has become moot, since amendments to the Regulation now make the advancement of expenses optional, rather than mandatory. *See* **Exhibit 1** at Rule 15.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully submit that Plaintiffs' Complaint should be dismissed for want of standing and ripeness or, in the alternative, for failure to state a claim upon which relief can be granted.

Moreover, comity considerations also weigh strongly in favor of declining jurisdiction over this case.  Under the law of this Circuit, federal equitable relief is not appropriate in cases as this one, regarding matters of great importance to the Commonwealth's constitutional balance of powers and in which there is adequate relief available in the Puerto Rico courts.  *See Montañez-Allman v. García-Padilla*, 782 F.3d 42, 44 (1st Cir.2015).  Courts should be particularly reluctant to resolve important questions of public law in a declaratory action and should not use declaratory judgments to halt the enforcement of state law.  *See Díaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 41 (1st Cir. 2006).  "[A] federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts."  *Courthouse News Serv. v. Brown*, 908 F.3d at 1070–71.  Accordingly, the Defendants respectfully believe that this Court, guided by principles of comity, equity, and federalism, should abstain and decline to exercise jurisdiction over this case, where Plaintiffs challenge the legality of a regulation approved by Puerto Rico's highest judicial court, the Puerto Rico Supreme Court, in the exercise of its inherent power to regulate the legal profession.  *See Romany v. Colegio de Abogados de Puerto Rico*, 742 F.2d at 42-43.

WHEREFORE, Defendants request that the Court grant this Motion to Dismiss and, as a result, enter judgment dismissing Plaintiffs' Second Amended Complaint with prejudice.

Respectfully submitted.

WE HEREBY CERTIFY that on this same date, we electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

In San Juan, Puerto Rico, this 16th day of January, 2023.

MCCONNELL VALDES LLC
270 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Tel: (787) 759-9292
Fax: (787) 759-8282

By: s/ *Juan A. Marqués-Díaz*
Juan A. Marqués-Díaz
USDC-PR No. 211803
jam@mcvpr.com

By: s/ *Isabel Torres Sastre*
Isabel Torres Sastre
USDC-PR No. 229114
its@mcvpr.com