IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COLEGIO DE ABOGADOS Y ABOGADAS DE PUERTO RICO, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> HON. SIGFRIDO STEIDEL FIGUEROA, ET AL., <br><br> Defendants. | CIVIL NO. 19-2135 (CVR) <br><br><br> RE: <br><br><br> Civil Rights; Declaratory Judgment; Injunctive Relief |

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

TO THE HONORABLE COURT:

COME NOW Plaintiffs by and through their undersigned counsel and, pursuant to Local Rule 7(b) respectfully state and pray as follows:

**I. Introduction**

1.1. Pending before the Court is Defendants' Motion to Dismiss the Second Amended Complaint (hereinafter "SAC"), ECF 91, premised on two (2) principal grounds.

1.2. First, Defendants contend that the Court should decline to exercise its jurisdiction in this case because, to do so, the Court would intrude upon the independence of the Puerto Rico Judicial Branch, which would purportedly run afoul with basic principles of equity, comity, and federalism. Second, Defendants argue that Plaintiffs lack standing because allegedly their claims are not ripe for resolution.

1.3. Defendants also argue that Plaintiffs have failed to plead sufficient facts to properly assert several of the constitutional claims alleged in the SAC.

1.4.    As it is discussed in detail hereinbelow, Defendants' Motion should be denied because all the arguments raised therein are mistaken.

## II. <u>Argument</u>

<u>A. Applicable standard:</u>

2.1.    Defendants argued that their Motion to Dismiss should be analyzed under the Rule 12(b)(6) standard for failure to state a claim. ECF 91 at p.8-9. While Plaintiffs agree that some of the arguments raised by Defendants should be so analyzed, Plaintiffs clarify that the prevalent view in this district is that "standing challenges are more appropriately brought under Fed.R.Civ.P. Rule 12(b)(1)." *Igartua v. United States*, 86 F. Supp. 3d 50, 53 (D.P.R. 2015), *aff'd sub nom. Igartua v. Obama*, 842 F.3d 149 (1st Cir. 2016). *See also Municipality of San Sebastian v. Puerto Rico*, 89 F. Supp. 3d 266, 273 (D.P.R.), on reconsideration in part, 116 F. Supp. 3d 49 (D.P.R. 2015) (addressing motion to dismiss for lack of standing as a challenge to subject-matter jurisdiction under Rule 12(b)(1)).

2.2.    Rule 12(b)(1) is also the procedural vehicle to analyze jurisdictional challenges premised on ripeness. *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001) (explaining that Rule 12(b)(1) "is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction", including "those grounded in considerations of ripeness").

2.3.    "Rule 12(b)(1) motions challenging subject-matter jurisdiction are divided into two categories: facial challenges and factual challenges." *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). *Accord Torres-Negron v. J*

*& N Recs.*, LLC, 504 F.3d 151, 162 (1st Cir. 2007) ("There are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges.").

2.4. "When the moving party challenges jurisdiction based on the allegations in the complaint, the court must consider all the allegations in the complaint as true and will not look beyond the face of the complaint to determine jurisdiction." *Mercado Arocho v. United States*, 455 F. Supp. 2d 15, 18 (D.P.R. 2006). Moreover, the Court must draw all reasonable inferences in plaintiff's favor. *AES Puerto Rico, L.P. v. Trujillo-Panisse*, 133 F. Supp. 3d 409, 416 (D.P.R. 2015).

2.5. However, "when a court reviews a complaint under a factual challenge, the allegations have no presumptive truthfulness and the court is not limited to the allegations in the pleadings". *Mercado Arocho*, 455 F. Supp. 2d at 18 (Citations and internal quotation marks omitted.) "Rather, the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*.

2.6. Although Defendants never invoked Rule 12(b)(1) and the Motion does not identify the type of jurisdictional challenge that is being asserted therein, the tenor of Defendants' arguments point to a facial attack.

2.7. Accordingly, all the arguments raised in Defendants' Motion should be analyzed pursuant to the well-known Rule 12(b)(6) standard, which requires the Court to take all well pleaded facts as true and draw all reasonable inferences in Plaintiffs' favor. *See Laufer v. Acheson Hotels*, LLC, 50 F.4th 259, 265 (1st Cir. 2022) (noting that a Court's review of the allegations in connection with a facial jurisdictional attack "mirrors the plausibility standard for Rule 12(b)(6) motions" and that the ultimate "question is

whether the plaintiff's complaint – taking as true all … factual allegations, drawing all inferences in [plaintiff's] favor, but discarding legal conclusions and threadbare recitations of the elements – contains enough factual heft to demonstrate that the court has subject-matter jurisdiction.") (citations omitted); and *Great River Indus., Inc. v. Pub. Serv. Comm'n of Puerto Rico*, 131 F. Supp. 2d 265, 268 n. 2 (D.P.R. 2001) ("The standard to be applied to a 12(b)(1) 'facial attack' motion is practically identical to the one applied to 12(b)(6) motions.").

B. Plaintiffs have standing, and this action is ripe for adjudication:

    3.1.    Defendants contend that Plaintiffs lack standing to pursue the claims alleged in the SAC because "the injuries asserted in this case are entirely speculative and hypothetical, rather than concrete and particularized and actual or imminent", ECF 91 at p. 11, and that the issues raised by Plaintiffs are not ripe for adjudication because "the constitutional violations alleged by Plaintiffs in the Complaint depend on the occurrence of a chain of several uncertain or contingent future events that may not occur as anticipated or may not occur at all." ECF 91 at p. 15.

    3.2.    Although Defendants discussed those two (2) contentions in separate sections, Plaintiffs will address them together since they are interrelated. *See Reddy v. Foster*, 845 F.3d 493, 499 (1st Cir. 2017) (recognizing that "the justiciability doctrines of standing and ripeness … are interrelated".); and *McInnis-Misenor v. Maine Medical Center*, 319 F.3d 63 (1st Cir. 2003) ("[S]tanding and ripeness inquiries overlap.").

    3.3.    In essence, the standing doctrine requires the plaintiff to have "a personal stake in the outcome". *Baker v. Carr*, 369 U.S. 186, 204 (1962). The "irreducible constitutional minimum" of standing consists of three elements, *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992), to wit: "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019). A concrete and particularized injury occurs when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action". *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

    3.4.    The key factor in the ripeness analysis is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (Cleaned-up.)

    3.5.    Ultimately, a litigant may satisfy both the standing and ripeness requirements before suffering an actual injury if the threat of injury or harm "is certainly impending, or if there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). *See also Guilford Coll. v. McAleenan*, 389 F. Supp. 3d 377, 390 (M.D.N.C. 2019) ("While the injury faced by a plaintiff must be certainly impending, we do not require parties to operate beneath the sword of Damocles until the threatened harm actually befalls them.") (Cleaned-up).

    3.6.    The caselaw on the subject recognizes that "the threatened enforcement of a law may suffice as an imminent Article III injury in fact." *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (Cleaned-up.) *See also Commonwealth of Pennsylvania v. State of W. Virginia*, 262 U.S. 553, 593, (1923) ("One does not have to await the consummation

of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough."); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."); and *Flamer v. City of White Plains, N.Y.*, 841 F. Supp. 1365, 1372 (S.D.N.Y. 1993) ("The standing requirement is, therefore, met where a regulation or law poses a real and imminent threat of injury to a plaintiff.").

3.7. As to what constitutes a "real and imminent threat of injury" in the context of a challenged regulation, the court in *Gralike v. Cook*, 996 F.Supp. 889 (W.D. Mo. 1998), explained that there are two (2) determining factors. "One factor in deciding whether plaintiff has alleged an actual or imminent threat of injury is whether plaintiff is challenging a regulation which he himself is the object." *Id*, at p. 896. "A second factor in deciding whether there is an imminent threat of harm to the plaintiff is the plaintiff's level of certainty that he will engage in conduct that will subject him to injury." *Id*.

3.8. Plaintiffs respectfully posit that that they have suffered an injury in fact given the imminence of the threatened harm that is inflicted upon them by the implementation of the Puerto Rico Regulation for the Assignment of Court Appointed Attorneys ("Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico "), hereinafter "Regulation", that is the subject of this action and that came into effect on January 1st, 2020, as it was alleged in the SAC. *See* ECF 51-1 at ¶¶ 1, 7, and 25.

3.9. Specifically, the SAC alleges that, pursuant to Rule 25(b) of the Regulation, all attorneys licensed to practice the legal profession in Puerto Rico younger than seventy (70) years of age, including all the Individual Plaintiffs, had to file electronically, within the

forty-five (45) days Immediately preceding the date of effectiveness of the Regulation, an "initial declaration" form containing certain information that will be used to create the order in which they will be called to provide pro bono services in criminal and civil cases within the judicial zones in which they are placed, that, should an attorney fail to submit the initial declaration by its due date, Defendant José Ignacio Campos Pérez had to send a notice of noncompliance after which the attorneys had thirty (30) days to do so under penalty of being referred to the Puerto Rico Supreme Court for the initiation of disciplinary proceedings. ECF 51-1 at ¶ 47.

    3.10.   The SAC adds that:

48. The Individual Plaintiffs were required to submit the initial declaration no later than December 31, 2019.

49. None of them, except for Milton David Roque García, submitted the form required by Rule 25(b) by the due date.

50. On or about January 4, 2020, original Defendant Sonnya Isabel Ramos Zenon, then Interim Clerk of the Puerto Rico Supreme Court, sent a sent a "Notice of Noncompliance" to most of the Individual Plaintiffs that failed to submit the "Initial Declaration" by December 31, 2019 informing them that, from the date of the Notice, they had a 30-day term, that cannot be extended, to submit the "Initial Declaration" and that, should they fail to do so, they will be referred to the Puerto Rico Supreme Court for the initiation of disciplinary proceedings against them.

51. On or about January 14, 2020, Defendant José Ignacio Campos Pérez sent the "Notice of Noncompliance" to the remaining Individual Plaintiffs that did not file the initial declaration by December 31, 2019, with the exact same language and threat of disciplinary proceedings as the Notice sent by original Defendant Sonnya Isabel Ramos Zenon on January 4, 2020.

52. Rule 25(b) of the Regulation further provides that, in the event that an attorney does not submit the initial declaration within the thirty (30) days following the issuance of the "Notice of Noncompliance", Defendant José Ignacio Campos Pérez is required to inform the Puerto Rico Supreme Court and that the latter may initiate disciplinary proceedings.

53. Several of the Individual Plaintiffs recently submitted the initial declaration under protest and with an express reservation of rights. Others, including Edgardo Román Espada, Evelyn Jannet García López, Loharina Velázquez Castro, and Alejandro Torres Rivera, have not done so even though they received the Notice of Noncompliance on January 4, 2020. Thus, they may now be referred to the Puerto Rico Supreme Court for the commencement of disciplinary proceedings against them.

54. The Individual Plaintiffs are under a real and imminent threat to lose their fundamental right to continue to practice their chosen profession simply because they do not accept to surrender their liberty and property interests without due process and just compensation.

55. Additionally, Individual Plaintiffs Edgardo Román Espada, Evelyn Jannet García López, Eladio Malavé Núñez, Waleska Delgado Sánchez, Nora Cruz Molina and Gustavo A. Quiñones Pinto are currently serving as court appointed attorneys in various civil or criminal proceedings that are still active. While they were all designated in that capacity prior to January 1st, 2020, they are all subject to the provisions of the Regulation pertaining to the collection of the attorney's [fees]to which they are entitled and to the reimbursement of the expenses incurred by them as a result of those designations.

ECF 51-1 at pp. 15-16.

3.11. The previously cited allegations make perfectly clear that all the Individual Plaintiffs, except for Gustavo A. Quiñones Pinto, are in imminent danger of facing disciplinary proceedings due to their failure to comply with the filing of the "initial declaration" required by Rule 25(b) of the Regulation and that Individual Plaintiffs Edgardo Román Espada, Evelyn Jannet García López, Eladio Malavé Núñez, Waleska Delgado Sánchez, Nora Cruz Molina and Gustavo A. Quiñones Pinto were serving as court appointed attorneys in various civil or criminal proceedings at the time that the Regulation became effective and, thus, are all subject to the provisions of the Regulation pertaining to the collection of the attorney's fees to which they are entitled and to the reimbursement of the expenses incurred by them as a result of those designations.

3.12.    In light of those allegations, there is nothing speculative about the nature of Plaintiffs' claims since they are all subject to the provisions of the Regulation and they all have a personal stake in the outcome of this litigation, which is undoubtedly ripe for adjudication.

3.13.    In sum, the facts alleged in the SAC "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). *See also Xynergy Healthcare Cap. II LLC v. Municipality of San Juan*, 516 F.Supp.3d 137, 145 (D.P.R. 2021) ("An actual controversy is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (Cleaned-up.)

3.14.    Accordingly, Defendants' contentions regarding Plaintiffs lack of standing or the absence of ripeness are meritless and should be rejected.

C. Plaintiffs Have Properly Pled Deprivations of Liberty and Property Without Due Process:

4.1.    The SAC alleges that the Individual Plaintiffs have a liberty and proprietary interest over their inalienable and fundamental right to earn a living through the practice of the legal profession. The caselaw on the subject indisputably establishes that legal reality.

4.2.    To that effect, the Supreme Court recognized 135 years ago:

'that all men are endowed' – not by edicts of emperors, or decrees of parliament, or acts of congress, but 'by their Creator with certain inalienable rights.' – that is, rights which cannot be bartered away, or given away, or taken away, except in punishment of crime – 'and that among these are life, liberty, and the pursuit of happiness; and to secure these' – not grant them,

9

but secure them – 'governments are instituted among men, deriving their just powers from the consent of the governed.' Among these inalienable rights, as proclaimed in that great document, is the right of men to pursue their happiness, by which is meant the right to pursue any lawful business or vocation, in any manner not inconsistent with the equal rights of others, which may increase their prosperity or develop their faculties, so as to give to them their highest enjoyment. The common business and callings of life, the ordinary trades and pursuits, which are innocuous in themselves, and have been followed in all communities from time immemorial, must therefore be free in this country to all alike upon the same conditions. The right to pursue them, without let or hinderance, except that which is applied to all persons of the same age, sex, and condition, is a distinguishing privilege of citizens of the United States, and an essential element of that freedom which they claim as their birthright. It has been well said that 'the property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable.

*Butchers' Union Slaughterhouse Co. v. Crescent City Live-Stock Landing Co.*, 111 U.S. 746, 756-57 (1884).

4.3. The Supreme Court has consistently reiterated that preeminent principle ever since:

Included in the right of personal liberty and the right of private property-partaking of the nature of each – is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the longestablished constitutional sense.

*Coppage v. Kansas*, 236 U.S. 1, 14 (1915).

4.4. In *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 238-39 (1957), the Supreme Court expressly included the practice of the legal profession within those occupations that are worthy of constitutional protection: "A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *See also Becker v. Illinois Real Estate Admin. and Disciplinary Bd.*, 884

F.2d 955, 957 (7th Cir. 1989) ("Several professions have been recognized as constituting 'common occupations.' These professions include an attorney."); and *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1259 (3d Cir. 1994) ("The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments.").

4.5.   Given that the practice of the legal profession is a fundamental right, the Regulation can be held to be constitutionally valid only if it passes the test of strict judicial scrutiny, which is reserved for cases involving laws which operate the disadvantage of suspect classes or, as in this case, interfere with the exercise of fundamental rights and liberties explicitly or implicitly protected by the Constitution. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 18-20 (1973). *See also Kreitzer v. Puerto Rico Cars, Inc.*, 417 F. Supp. 498, 502 (D.P.R. 1975) ("[T]he Supreme Court has employed a stricter test where the classification is based on 'suspect criteria' or where the classification restricts some fundamental right. There those are involved, the classification must not only meet the standards of the traditional test of the reasonableness as pointed above, but there must be a compelling state interest served by the classification.").

4.6.   In the case at bar, the Regulation does not identify the compelling state interest that would warrant the interference with the Individual Plaintiffs' fundamental right to practice their profession. That is particularly applicable to civil cases where the consensus is that, unlike criminal cases, there is no federal constitutional right to legal assistance. *See Pitts v. Shinseki*, 700 F.3d 1279, 1283 (Fed. Cir. 2012) ("It is well established that, as a general matter, the constitutional right to counsel – and thus the

11

constitutional right to the effective assistance of counsel – does not attach in civil cases that do not involve the potential deprivation of a liberty interest.").

4.7. As the Supreme Court of Louisiana eloquently explained in *State v. Wigley*, 624 So. 2d 425, 428 (La. 1993):

> To require that attorneys represent indigents with no recompense while bearing the expenses of the representation, when the attorneys must maintain their own practices and continue to meet their other professional and financial obligations in today's changed legal marketplace, is so onerous that it constitutes an abusive extension of their professional obligations. (Citation and internal quotation marks omitted.)

4.8. Or, as one oft-quoted commentator has noted: "It is unfair to put on any working group the burden of providing for the needy out of its stock in trade. No one would suggest that the individual grocer or builder should take the responsibility of providing the food and shelter needed by the poor. The same conclusion applies to the lawyer. The lawyer's stock in trade is intangible – his time fortified by his intellectual and personal qualities, and burdened by his office expenses. To take his stock in trade is like stripping the shelves of the grocer or taking over a subdivision of the builder." Cheatham, *Availability of Legal Services: The Responsibility of the Individual Lawyer and of the Organized Bar*, 12 UCLA L.Rev. 438, 444 (1965).

4.9. In sum, Plaintiffs have properly alleged a liberty and/or property interest that is worthy of constitutional protection and that can only be burdened or limited by a state compelling interest that the Regulation does not articulate.

D. Plaintiffs Have Properly Pled a Cause of Action for Vagueness:

5.1. In *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972), the Supreme Court explained that, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly

delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.") (footnotes and citations omitted).

5.2. More recently, the Court admonished that, "[i]n our constitutional order, a vague law is no law at all." *US v. Davis*, 139 S.Ct. 2319, 2323 (2019).

5.3. In the case at bar, the SAC alleged that Regulation does not adequately define the civil proceedings that qualify for the provision of free legal services, nor does it define the concept of "arisen indigency", thus allowing an arbitrary application on a case-by-case basis. ECF 51-1, ¶ 94.

5.4. Those allegations, which must be taken as true, sufficiently and adequately plead a cause of action for vagueness.

E. Plaintiffs Have Properly Pled a Violation of the Equal Protection Clause:

6.1. The SAC alleges that "[a]ttorneys in private practice, including the Individual Plaintiffs, are the only class of professionals that, by virtue of the Regulation, are compelled to perform services without compensation while no other professionals, such as court reporters, process servers, and expert witnesses, are required to provide their goods or services to the needy free of charge." ECF 51-1, ¶ 98.

6.2. Said allegation is more than sufficient to properly allege a violation of the equal protection clause in view of the caselaw that holds that the obligation to provide criminal defendants with adequate legal counsel is the States' and the States alone. Thus, attorneys cannot be the only professionals in the criminal justice system burdened by the States in helping the States to meet their constitutional obligations.

6.3.     To that end, the Court in *Colbert v. Rickmon*, 747 F.Supp. 518, 525 (W.D. Ark. 1990), explained as follows:

> It cannot be disputed that the assistance of the poor is a legitimate governmental function. But, this goal cannot be accomplished by burdening one particular class of persons in an effort to solve what is clearly a governmental, societal, and nationwide problem. No other profession is similarly conscripted to aid the poor.

6.4.     And added that "[i]t is unfair to single out a class defined as including the legal profession and as a sub-class, the relatively few litigation attorneys qualified and able to represent the poor, to bear a burden that belongs to society as a whole". *Id*; at 527.

6.5.     Accordingly, Plaintiffs have sufficiently plead a violation of the equal protection clause.

F. Plaintiffs Have Sufficiently Pled a Takings Claim:

7.1.     Defendants contend that Plaintiffs may not validly assert a takings claim because all lawyers in Puerto Rico are purportedly obliged by Canon 1 of the Puerto Rico Canons of Professional Ethics, PR ST. T. 4 Ap. IX, § 1, to provide free legal services to the indigent.

7.2.     Defendants conveniently lose sight of the fact that Canon 1 only mentions "accused" and says nothing about civil indigent litigants. Most importantly, Defendants fail to recognize that Canon 26 expressly provides that "**[n]o lawyer is obliged to undertake the representation of a particular client and he has the right to accept or decline employment**." PR ST. T. 4 Ap. IX, § 26; emphasis added.

7.3. Thus, compelled free representation of indigent litigants is not an ethical duty imposed by the Puerto Rico Canons of Professional Ethics. Any other interpretation would deem the canons unconstitutional.

7.4. In the takings analysis, Defendants also overlook the fact that the Regulation's imposition of the obligation to provide without any compensation the first thirty (30) hours of work for a court appointed client permanently deprives attorneys of their property: to wit, their time, knowledge and litigation skills. Such deprivation is a textbook example of a categorical regulatory taking since, by proscribing the attorney from charging for those thirty (30) hours, "prohibit[s] all economically beneficial or productive use" of Plaintiff's property. *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1307 (Fed. Cir. 2015) (citation and internal quotation marks omitted).

7.5. Accordingly, the SAC does allege a plausible takings claim.

### III. Conclusion

8.1. The preceding discussion clearly establishes that Plaintiffs have standing to assert the claims alleged in the SAC and that the disputes raised therein are ripe for adjudication.

8.2. Moreover, it convincingly shows that the SAC does sufficiently and adequately pleads viable constitutional claims.

8.3. Hence, Defendants' Motion to Dismiss should be denied.

WHEREFORE, Plaintiffs respectfully request the Court to deny Defendants' Motion to Dismiss the Second Amended Complaint.

WE HEREBY CERTIFY: that, on this same date, the foregoing Opposition was filed with the Clerk of this Court using the CM/ECF system, which will automatically send electronic notification of such filing to all counsel of record.

Respectfully submitted, in San Juan Puerto Rico, on March 7, 2023.

<u>*S/Tanaira Padilla-Rodríguez*</u>
Tanaira Padilla-Rodríguez
USDC-PR No. 227912

Ave. Ponce de León 1225
VIG Tower, Suite 1500
San Juan, P.R., 00907
Tel: (787) 620-0527
Fax: (787) 620-0039

<u>*S/Guillermo Ramos-Luiña*</u>
Guillermo Ramos-Luiña
USDC-PR No. 204007
gramlui@yahoo.com

PO Box 00931-2763
San Juan, PR 00931-2763
Tel: (787) 620-0527
Fax: (787) 620-0039

*Attorneys for the Plaintiffs*